UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
JACQUELINE ALSTON; JAQUANA GREEN; LEGIND
GREEN, individually and as Father and Natural Guardian
of L.G., JR. (age 5); and ELIJAH PETERS,

19 CV 3978

                Plaintiffs,

    -against-                                    COMPLAINT

THE CITY OF NEW YORK; DETECTIVE THIRD-GRADE
R. REILLY, Shield 1475, Brooklyn Narcotics South; and     JURY TRIAL
JOHN and JANE DOES 1-10,                                DEMANDED

                Defendants.
-------------------------------------------------------------------------X

        Plaintiffs, by their attorney, Joel Berger, Esq., for their complaint allege, upon information and belief, as follows:

### *NATURE OF THE ACTION*

        1.      This is an action to recover money damages arising out of the violation of plaintiffs' rights under the Constitution and laws of the United States and the State of New York, including an illegal entry into and search of a dwelling by employees of the New York City Police Department (NYPD).

### *JURISDICTION AND VENUE*

        2.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, and Fourteenth Amendments to the Constitution of the United States.

        3.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

        4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

### *PENDENT JURISDICTION*

        5.      This Court also has jurisdiction over plaintiffs' state law claims, pursuant to its

pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6.  On May 2, 2019, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York pursuant to § 50-e of the General Municipal Law, and GML § 50-H hearings were conducted on July 9, 2019.

7.  At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

8.  This action is being commenced within one year and ninety days after the happening of the events upon which the claims are based.

### *JURY DEMAND*

9.  Plaintiffs demand trial by jury in this action.

### *PARTIES*

10. Plaintiffs are all African-Americans, citizens of the United States and residents of the State of New York.

11. Jacqueline Alston, age 54, is lessee and resident of the Brooklyn dwelling where the NYPD raid that is the subject of this lawsuit took place: 272 Wyckoff Street, Apartment 15B, Brooklyn, NY 11217 -- a building in the Wyckoff Gardens Houses, a project of the New York City Housing Authority (NYCHA).

12. Jaquana Green, age 22, is the daughter of Jacqueline Alston. She also is lessee and resident of the apartment where the NYPD raid that is the subject of this lawsuit took place.

13. Legind Green, age 27, is the son of Jacqueline Alston. He also is a resident of the apartment where the NYPD raid that is the subject of this lawsuit took place.

14. Legind Green brings this lawsuit both individually and as Father and Natural

Guardian of his son, L.G., Jr., age 5, who frequently resides in and was present in the apartment when the NYPD raid that is the subject of this lawsuit took place. He was age 4 on the date of the raid.

15. Elijah Peters, age 23, is a friend of Jaquana Green who was present in the apartment when the NYPD raid that is the subject of this lawsuit took place

16. Plaintiffs Jacqueline Alston, Jaquana Green, Legind Green and Elijah Peters are all gainfully employed. Plaintiff Jaquana Green recently graduated from the State University of New York (SUNY) at Oswego, N.Y. and has been accepted into a Master's degree program at Hunter College starting this fall. None of the plaintiffs has ever been convicted of any criminal offense.

17. Defendant City of New York is a municipal corporation organized under the laws of the State of New York.

18. Defendant City of New York operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers, detectives and supervisory police officers.

19. At all times relevant herein, defendant R. Reilly (first name believed to be Richard) was a NYPD Detective Third-Grade, Shield 1475, assigned to Brooklyn Narcotics South, who plaintiffs believe was the officer in charge of the raid.

20. At all times relevant herein, John and Jane Does 1-10 were NYPD officers, detectives, or supervisors who authorized, ordered, participated in or were otherwise involved pre-execution planning and/or execution and/or post-execution critique of the raid.

21. At all times relevant herein, defendants Reilly and John and Jane Does 1-10 were acting as agents, servants and employees of defendant City of New York and the NYPD.

3

22. At all times relevant herein, all defendants were all acting under color of state law.

## *FACTS*

23. On April 27, 2019, a Saturday morning, defendants broke through the door of the dwelling at 272 Wyckoff Street, Apartment 15B, Brooklyn, New York.

24. Defendants broke through the door prior to 6:00 A.M., at approximately 5:30 A.M.

25. Defendants did not knock or identify themselves before breaking into the dwelling.

26. The officers had firearms drawn and pointed at plaintiffs as they broke through the door of the dwelling.

27. Approximately 10 officers, most of whom are Caucasian, participated in the raid.

28. Upon breaking into the dwelling the officers ordered all of the adult plaintiffs to "get on the fucking ground" and "shut the fuck up," or words to that effect.

29. All of the adult plaintiffs were handcuffed by the police officers shortly after the officers' forced entry into the dwelling.

30. The police officers searched the apartment extensively between approximately 5:30 A.M. and 9:30 A.M.

31. The officers harmed and destroyed plaintiffs' property during the search and left the dwelling in great disarray.

32. The adult Claimants remained handcuffed throughout the entire episode.

33. No arrests were made.

34. No contraband sought by the officers as justification for the raid was recovered.

35. The only alleged contraband found was an item that the police claimed was a tobacco

"crusher" belonging to plaintiff Elijah Peters.

    (i)    Mr. Peters was issued a summons for unlawful possession of marijuana, which under New York State Penal Law § 221.05 is "a violation punishable only by a fine of not more than one hundred dollars" for a first-time offender.

    (ii)    Mr. Peters denies that the item contained any marijuana., as the item is used to grind tobacco and other lawful substances.

    (iii)    On the return date of the summons – July 2, 2019 – in the Red Hook Community Court, the charge was dismissed on motion of the prosecution.

    (iv)    The dismissal was not an Adjournment in Contemplation of Dismissal (CPL §§ 170.55 or 170.56) but rather an unconditional dismissal on the merits.

36.    The summons issued to Mr. Peters was signed by defendant Detective Reilly, Shield 1475, of Brooklyn Narcotics South.

37.    Detective Reilly also took from Mr. Peters's jacket pocket a federal tax refund check to Mr. Peters for $117;

38.    The tax refund check has not been returned to Mr. Peters.

39.    Mr. Peters had ID and the check was not necessary for identification.

40.    Before departing the premises the officers informed plaintiffs that the target of the raid was an individual with a name or nickname that appeared to be something like "Young Stacks."

41.    None of the plaintiffs know this person or know of him or know anything about him.

42.    The individual identified as "Young Stacks" is a person with whom plaintiffs have no connection whatsoever.

43. The individual identified as "Young Stacks" does not live in 272 Wyckoff Street, Apartment 15B.

44. The individual identified as "Young Stacks" is not one of the lessees of 272 Wyckoff Street, Apartment 15B.

45. NYCHA records reflect that the only lessees of 272 Wyckoff Street, Apartment 15B are plaintiffs Jacqueline Alston and Jaquana Green.

46. The individual identified as "Young Stacks" has never visited Apartment 15B of 272 Wyckoff Street.

47. Defendants knew, or should have known had they engaged in even the most rudimentary inquiry required by the Fourth Amendment to the Constitution of the United States, Article I, §12 of the Constitution of the State of New York, and numerous NYPD regulations, that the only lessees of Apartment 15B of 272 Wyckoff Street, are Jacqueline Alston and Jaquana Green.

48. Defendants knew, or should have known had they engaged in even the most rudimentary inquiry required by the Constitution of the United States, the Constitution of the State of New York, and numerous NYPD regulations, that none of the residents or Mr. Peters had ever been observed by any law enforcement officers to have engaged in any illegal conduct justifying the raid, and that none of them had any criminal records or any outstanding warrants.

48a. Toward the end of the episode plaintiffs observed officers engaging in communications for the purpose of determining whether any of the plaintiffs had any outstanding warrants, thereby establishing that the officers had failed to make any such inquiry prior to the raid.

49. In light of the facts that (i) no arrests were made, (ii) no contraband sought by the

officers as justification for the raid was recovered and (iii) the alleged target of the raid has no relationship of any kind with the raided apartment or any of its occupants, the raid violated plaintiffs' rights secured by the Constitution of the United States and the Constitution of the State of New York.

50. Even if the police had a search warrant based upon the allegations of a confidential informant (CI), the CI and the CI's allegations were grossly unreliable.

51. Even if the police had a search warrant based upon the allegations of a confidential informant (CI), the police could not have engaged in any significant inquiry to verify the reliability of the CI and the CI's allegations.

52. Police officers are not shielded from liability when a search warrant is obtained by deliberately or recklessly withholding relevant information from the issuing magistrate, such as information indicating the unreliability of the confidential informant (CI) and the CI's allegations, or information indicating the absence of any significant inquiry by the police verifying the reliability of the CI and the CI's allegations. *McColley v. County of Rensselaer*, 740 F.3d 817 (2d Cir. 2014); *Southerland v. City of New York*, 680 F.3d 127, 144-148 (2d Cir. 2012), *rehearing en banc denied*, 681 F.3d 122 (2d Cir 2012), *cert. denied*, 568 U.S. 1150 (2013); *Golino v. City of New Haven*, 950 F.2d 864, 870-72 (2d Cir. 1991), *cert. denied*, 505 U.S. 1221 (1992); *Cook v. City of New York*, 243 F. 3d 332, 345-46 (EDNY 2017) (Pollak, U.S.M.J.).

53. If defendants had a search warrant, it would have been obtained and executed in violation of numerous guidelines and requirements issued by the Police Commissioner in the wake of the death of Ms. Alberta Spruill during a raid in Harlem in May 2003, including, but not limited to:

(i)   the pre-execution investigation and documentation required by NYPD Patrol Guide (PG) 212-75, including, but not limited to, investigation and documentation into who lives in the dwelling, whether any of the residents have any criminal records or outstanding warrants, and whether any child may be there;

(ii)   the Search Warrant Execution guidelines (PG 221-17);

(iii)   the Confidential Informants Guidelines (PG 212-68);

(iv)   the Formal Post-Execution Critique (PG 212-106) that must be prepared by the Commanding Officer who supervised execution of the warrant and the review of that Critique by overhead command -- especially important in cases where execution of a search warrant produces no contraband sought by the officers as justification for the raid and no arrests whatsoever;

(v)   Commissioner Kelly's report to the Mayor on the *Spruill* case (May 30, 2003) at 8, 9, 10, 12 and 20, which in turn quotes Chief of Patrol Estavillo's memorandum of October 23, 2002 (Memorandum Number 567s.02); and

(vi)   Commissioner Kelly's testimony before the New York City Council Committee on Public Safety (June 4, 2003) at 41, 48, 88-89.

54.   Defendants ignored plaintiffs' numerous requests to be shown a copy of any search warrant, in violation of NYPD regulations.

55.   PG 221-17 ¶ 23 commands NYPD officers executing a search warrant to "[s]how a copy of the search warrant, upon request, safety permitting."

56.   Since the premises of the raid had been secured and all adult plaintiffs had been

handcuffed, there were no safety considerations justifying the officers' failure to show plaintiffs a copy of any warrant, as required by the NYPD Patrol Guide.

57. The raid has left plaintiffs shattered and frightened.

58. Plaintiffs are fearful that if the police could do this sort of thing to them once it could easily happen again.

59. Plaintiffs are scared that they have no defense against this kind of police intrusion into the sanctity of a dwelling.

60. The infant L.G., age 4 on the date of the raid, was terrified, crying and screaming, and has been traumatized by experiencing such an encounter with the police at such an early age

61. Jacqueline Alston suffered a meniscus tear above her right knee when she was startled by the officers' violent entry into the dwelling.

### FIRST CLAIM FOR RELIEF

62. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-61.

63. Defendants Reilly and John and Jane Does 1-10, by their conduct toward plaintiffs alleged herein, violated plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the Fourth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 6, 11 and 12 of the Constitution of the State of New York.

### SECOND CLAIM FOR RELIEF

64. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-61 and 63.

65. The conduct toward plaintiffs alleged herein constituted an illegal entry into and search of a dwelling, false imprisonment, destruction of property, and employee negligence.

66. The conduct toward plaintiffs alleged herein subjected them to trauma, shock, debasement, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering.

### THIRD CLAIM FOR RELIEF

67. Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-61, 63, and 65-66.

68. At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 6, 11 and 12 of the Constitution of the State of New York.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against all individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
July 10, 2019

/s/ Joel Berger
**JOEL BERGER**
675 Third Avenue, 8th Fl.
New York, New York 10017
(212) 687-1425

**ATTORNEY FOR PLAINTIFFS**